IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| DAVID J. POWELL, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CIVIL ACTION NO. 13-00497-KD-C |
|  | ) |  |
| AMERICAN REMEDIATION & | ) |  |
| ENVIRONMENTAL, INC., *et al.*, | ) |  |
| Defendant. | ) |  |

## ORDER

This matter is before the Court on Defendant ARE's Motion for Summary Judgment (Docs. 43, 46), Plaintiff's Response (Doc. 52, 54, 55), and Defendant's Reply (Doc. 61-1 to 61-9, 62, 63); and Defendants Eubanks' and Wallace's Motion for Summary Judgment (Docs. 44, 47), Plaintiff's Response (Docs. 57-60), and Defendants' Reply (Doc. 64, 65).

As alleged, this case is about Plaintiff David J. Powell's ("Powell") Title VII and Section claims for race discrimination (drug testing and termination) against his former employer Defendant American Remediation & Environmental, Inc., ("ARE").[1] This case is a swearing match between ARE and Powell, as to whether he smoked synthetic marijuana ("spice") in a company van on January 18, 2012 or whether such "false pretenses" were fabricated by ARE to "get him fired" so that a Caucasian relative of one of the higher-ups could take his job.

## I. Findings of Fact[2]

---

[1] ARE is an environmental service company that performs environmental cleanup, industrial cleanup, hazardous waste hauling, pipeline service work, heavy wreck and demolition work, and pneumatic excavation. (Doc. 54-1 (Dep. George at 20)).

[2] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

On August 19, 2010, Powell, an African American, applied for employment with ARE. (Doc. 43-1; Doc. 54-5 (Dep. Powell at 42)).[3] Powell was hired and on September 20, 2010, started as a technician. (Doc. 46-2; Doc. 59-1 (Aff. Powell SEALED); Doc. 43-5 (Dep. Wallace at 23); Doc. 43-6 (Dep. Corbeil at 42-43)).[4] While Powell had "absolutely no [prior] experience" in this position, he eventually became a leadman for a crew (the person with whom a contractor will directly communicate regarding job issues), in addition to his technician duties. (Id. (Dep. Corbeil at 18-19, 42-43); Doc. 43-5 (Dep. Wallace at 23-35); Doc. 43-7 (Dep. Powell at 58)).

The facts from this point forward are disputed at every turn. Without itemizing each and every dispute, the following is a brief synopsis of the varying versions of events.

According to ARE, on January 17, 2012, employee Jason Bishop ("Bishop") was driving the company van filled with other employees to a job site in Mississippi, when he smelled something, looked in the rearview mirror, and saw Powell and a Caucasian employee Scott Kondroski ("Kondroski") "passing what appeared to be a joint back and forth[--]" smoking something "did not look like a cigarette." (Doc. 43-9 (Dep. Bishop at 31-43, 51); Doc. 43-6 (Dep. Corbeil at 34, 36); (Doc. 61-4 (Dep. Bishop at 47)). According to Bishop, because he "didn't want to get in trouble[,]" that evening he called his supervisor Martin Corbeil ("Corbeil") to report what had happened, and Corbeil told Bishop he would "take care of it" and immediately called his supervisor Lee Eubanks ("Eubanks"). (Doc. 43-9 (Dep. Bishop at 38-40, 50-51); Doc.

---

[3] Powell acknowledged in his application that the information contained therein was correct and that he would be subject to dismissal if he provided false or misleading information and/or otherwise failed to provide the information requested in his application. (Doc. 43-1). Powell also acknowledged that he understood that his employment would be at-will and that he or ARE may terminate the employment at any time and for any reason.

[4] Random employee drug testing was part of being employed at ARE. Powell's initial drug test result during the hiring process was negative. (Doc. 43-13). On September 24, 2010, Powell acknowledged ARE's Drug-Free Workplace Policy and Alcohol Policy, each of which state that employees must be free of alcohol and drugs. (Doc. 43-3). On September 24, 2010 and January 21, 2011, Powell acknowledged that he would be subject to ARE's Drug-Free Workplace Policy. (Id.) Powell was drug tested on February 4 and 7, 2011 and July 15 and 20, 2011, and the results were negative. (Doc. 43-13).

2

61-4 (Dep. Bishop at 58); Doc. 43-6 (Dep. Corbeil at 35-37); Doc. 43-4 at 4). "I told him basically what I had seen and …I couldn't be a hundred percent positive but that's what I thought it was and he said he would look into it in the morning." (Doc. 43-9 (Dep. Bishop at 38)). "My personal opinion was a joint… synthetic or real marijuana, I couldn't tell you….to my opinion, it was a joint[,]" but Bishop never told anyone (including Corbeil) that he saw Kondroski and/or Powell smoking "spice." (Doc. 43-9 (Dep. Bishop at 42-43)).

According to Bishop, he never told Eubanks anything *directly*. (Doc. 43-9 (Dep. Bishop at 49)). Specifically, Bishop testified that he never told Eubanks that he observed Powell and Kondroski smoking some form of marijuana on the van. (Doc. 61-4 (Dep. Bishop at 49-52)).

According to Eubanks, Bishop called him directly and reported the incident. And per Corbeil, he talked with Eubanks about the allegations and they decided to protect Bishop's identity and say it was "an anonymous caller." (Doc. 54-4 (Dep. Corbeil at 43)). Eubanks told Corbeil that they would talk to the employees in the morning but unless someone confessed, "it's not much we can do, because you cannot test for spice." (Doc. 43-6 (Dep. Corbeil at 37)).

The next day, January 19, 2012, Eubanks interviewed Bishop, as he "wanted to hear it from the horse's mouth." (Doc. 43-10 (Dep. Eubanks at 80-85)). Eubanks then interviewed Kondroski and asked him to tell him the truth or be drug tested; per Eubanks, Kondroski admitted to smoking spice in the company van on January 18, 2012 and signed an ARE Employee Warning Notice admitting such. (Doc. 43-10 (Dep. Eubanks at 82-86); Doc. 43-4 at 3-4). Eubanks testified that Kondroski told him that Powell was also smoking spice with him in the van and stated as such in the ARE Employee Warning Notice, which Kondroski signed, and which included the following statement: "Scott admitted that h[e] and David Powell were smoking synthetic marijuana in the van on the previous day!.." (Doc. 43-10 (Dep. Eubanks at

3

84)). ARE's General Manager and Vice-President Robert Wallace ("Wallace") was notified about the situation and reported same to ARE's Owner Hunter George ("George"), who responded: "[t]hey [Kondroski and Powell] both need to be let go immediately." (Doc. 43-11 (Dep. George at 39-40)). George "had the ultimate decision" to let them go. (Id.) On January 19th, Kondroski was terminated. (Doc. 43-10 (Dep. Eubanks at 81-86); Doc. 43-4 at 3).

According to Kondroski, he never smoked real or synthetic marijuana with Powell, and never told Eubanks or anyone else at ARE that he did. (Doc. 54-9 (Aff. Kondroski)). Kondroski even states in his Affidavit that when he signed the ARE Employee Warning Notice, "*nothing* was written on the Notice about me smoking synthetic marijuana with David Powell. That part must have been written on the document *after* I signed it and was never shown to me." (Id. (emphasis added)). Kondroski asserts further, that he was not even sitting in the back of the van with Powell, but rather two (2) rows in front of him. (Id.)

George testified that the Kondroski statement, while signed by Kondroski, was actually written in Eubanks' handwriting. (Doc. 43-11 (Dep. George at 37-38)). Nevertheless, concerning Powell's suggestion that Eubanks wrote up the descriptive statement *after* Kondroski signed the Notice, George testified that Kondroski "wouldn't have been fired if he hadn't admitted to smoking synthetic marijuana[]" and he is "sure" it was written up before he signed the Notice. (Id. (Dep. George at 39-40)). George testified that after Kondroski's termination, Kondroski told him that he had been smoking spice and said nothing about Powell. (Doc. 43-11 (Dep. George at 70-71)).

Following Kondroski's termination, Eubanks asked an ARE supervisor, Sidney Madise, Jr. ("Madise"), to accompany him to interview Powell. (Doc. 43-4 at 5-6; Doc. 43-6 (Dep. Corbeil at 40-41)). Eubanks and Madise asked Powell what happened, and presented him with

4

Kondroski's statement. In response, Powell became agitated, denied smoking spice, said Kondroski's statement was false, and demanded to be drug tested. (Id.) (Doc. 55-1 (Aff. Powell-SEALED)). Powell asserts in his Affidavit that on the van ride, he was actually "asleep most of the ride back to Mobile. Nothing unusual happened on the ride that I noticed." (Id.)

Eubanks did not believe Powell. (Doc. 43-10 (Dep. Eubanks at 87-88)). Nevertheless, Eubanks communicated Powell's request to be drug tested to Wallace. (Doc. 43-4 at 6; Doc. 43-10 (Dep. Eubanks at 85)). Wallace then contacted the drug testing facility ARE used, and the facility's consultant advised there was only a 50/50 chance of receiving accurate results (Eubanks and other ARE employees believed that spice was undetectable when tested). (Doc. 43-10 (Dep. Eubanks at 86); Doc. 43-6 (Dep. Corbeil at 37); Doc. 43-5 (Dep. Wallace at 111-114); Doc. 43-9 (Dep. Bishop at 41-43)). ARE declined to pay for a drug test for Powell on January 19, 2012. (Doc. 43-5 (Dep. Wallace at 111-114)). Wallace denied the request because the "chances of synthetic marijuana being the result [detected] was a fifty-fifty chance[]" and his drug test consultants at Safety Plus "would not recommend me do the drug test because there's a fifty-fifty-chance that he'll pass or not pass." (Doc. 43-5 (Dep. Wallace at 111-113)). Eubanks also believed at that time there was no test for spice. (Doc. 43-10 (Dep. Eubanks at 86)). According to Eubanks, Wallace told him that he was not going to send Powell for a drug test "when he had a signed statement from another employee stating what had happened!" (Doc. 43-4 at 6-7; Doc. 43-10 (Dep. Eubanks at 86, 92)). Eubanks agreed with the decision. (Doc. 43-10 (Dep. Eubanks at 93)). According to George, "there's no detection for synthetic marijuana. There was no need to do it [a drug test for Powell]. We had a written statement from Scott Kondroski that him and David [Powell] were smoking synthetic marijuana." (Doc. 43-11 (Dep. George at 37)). George testified that Powell just wanted to take a drug test "because he knew that there

was no detection for synthetic marijuana." (Doc. 43-11 (Dep. George at 42)).

Powell did not have a drug test on his own, testifying he did not know that was a possibility. (Doc. 43-7 (Dep. Powell at 186-187)). According to Powell, Eubanks told him that he had spoken with Wallace and they had decided that there was no need to drug test him as they already had an employee's statement. (Doc. 55-1 (Aff. Powell-SEALED)). Per Powell: "I never, on any occasion, engaged in illicit activity with Scott Kondroski. I did not smoke synthetic marijuana [i]n the company van on January 18, 2012." (Id.)

After conducting an investigation without drug testing Powell, ARE concluded that the story told by Bishop and Kondroski was truthful whereas the story told by Powell was not. (Doc. 43-10 (Dep. Eubanks at 88); Doc. 43-11 (Dep. George at 44-45)). ARE prepared an Employee Warning Notice for Powell, formally terminating him, which Powell signed. (Doc. 43-4 at 1-2). On the Notice, Eubanks wrote: "I confronted David about what Scott…said and his reply was – Scott's not telling the truth, that – that did happen in the van but that he didn't participate." (Id.) On the Notice, Powell wrote: "in all my years of doing industrial work I know what to do and what not to do and that will not be professional. Thanks for the chance." (Id.) Wallace instructed Eubanks to confiscate Powell's work gear and escort him out and terminate him. (Doc. 43-4 at 6-7; Doc. 43-10 (Dep. Eubanks at 86, 92)). Eubanks told Powell he was terminated; Powell responded it was a bunch of "B.S." (Id.) Thus, on January 19, 2012, Powell was terminated for violating ARE's drug-free policy by smoking spice in the company van while on the job. (Doc. 43-4; Doc. 59-1 (Aff. Powell SEALED)).

Whether the other van passengers (employees) submitted statements regarding what transpired in the van on January 18, 2012 is yet another factual dispute, and if so, whether those statements were provided during discovery and to the EEOC, and/or even still exist:

- Eubanks recalls Wallace discussing "something" about getting statements from the other van passengers but does not recall if he has ever seen them. (Doc. 43-10 (Dep. Eubanks at 90-91)).

- George testified that he was not aware of any other written statements taken after Kondroski and Powell were fired. (Doc. 43-11 (Dep. George at 44)).

- According to Powell, Wallace told him that he was going to call "everybody in" that Friday to get statements from them and that "if everyone said that I didn't have anything to do what went on, he was going to call me personally and give me my job back." (Doc. 54-5 (Dep. Powell at 151)). While Wallace called everyone in the office and obtained statements, that did not happen. (Id.) See also (Doc. 55-1 (Aff. Powell-SEALED)).

- Per Wallace, on January 20, 2012, at the Friday safety meeting, he requested that the other van passengers were asked to write reports about the van incident. (Doc. 54-3 (Dep. Wallace at 88, 132, 150); Doc. 61-4 (Dep. Bishop at 45-47); Doc. 54-8 (Aff. Clark); Doc. 60-2 (Aff. Temple); Doc. 54-13 (Aff. Crawford)).

- Bishop testified that he saw the van passengers who were asked to provide statements turn the statements in to Wallace, and then Wallace read them out loud to everyone; one (1) statement said Powell and Kondroski had engaged in the suspected activity. (Doc. 61-4 (Dep. Bishop at 48-49)).

Regardless, on summary judgment, Powell has submitted affidavits from van passengers Teddy Clark, Richard Temple, and Anthony Crawford. Clark, Temple, and Crawford attest that they "did not see David Powell smoking any illegal substance in the company van on January 18, 2012[,]" "didn't see David smoking anything[,]" or "didn't see David Powell smoking synthetic marijuana that day[--]" adding that they had already provided statements to this effect to ARE. (Doc. 54-8 (Aff. Clark); Doc. 60-2 (Aff. Temple); Doc. 54-13 (Aff. Crawford); Doc. 54-12). According to Clark, Wallace called them "liars and gave us an opportunity to change our story, since everybody, aside from David Bishop, had said that David Powell was innocent of any wrongdoing. Everyone refused to change their story, so Robert Wallace sent us all to be drug and alcohol tested. Wallace told me I wouldn't have to take the drug test if I changed my story and lied about what happened on the van. I refused to lie, so I was made to take a drug test with the

7

rest of the guys." (Docs. 54-8 (Aff. Clark)).

A few months later, on May 3, 2012, Powell filed an EEOC Charge of Discrimination, claiming Wallace terminated his employment and he was discriminated against due to his race (African American), was falsely accused of using an illegal substance, and was replaced by a Caucasian male. (Doc. 43-12). Powell did not name or mention Eubanks in the EEOC Charge. (Id.) While he alleges such in his Complaint, Powell did not allege in his EEOC Charge that he was terminated to promote a member of Eubanks' family or that ARE required him to submit to an abnormal amount of drug testing. (*Cf.* Doc. 43-12 *with* Doc. 24). On July 16, 2013, the EEOC mailed the Notice of Suit rights to Powell. (Doc. 43-12).

On October 15, 2013, Powell sued ARE, Eubanks, and Wallace, alleging disparate treatment under Title VII of the Civil Rights Act of 1964 based on race (for false pretenses termination and abnormal amounts drug testing) (Count One), and intentional discrimination in violation of 42 U.S.C. § 1981 based on race (Count Two). (Doc. 24 (as amended)).

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

### III. Conclusions of Law[5]

---

[5] While Defendants have moved for summary judgment on what appear to be claims for disparate pay, written warnings, job assignments, bereavement pay, and failure to promote, Powell has not alleged these claims in his Complaint and thus, they are simply not before this Court in this case. (Doc. 24). Indeed, claims asserted in depositions or otherwise, but not included in a complaint, have not been considered and will not be addressed. See,

Powell asserts a race claim against Defendant ARE under Title VII of the Civil Rights Act of 1964 for disparate treatment due to "false pretenses" termination and "abnormal" amounts drug testing (Count One); and a general Section 1981 claim against Defendants ARE, Eubanks and Wallace, for intentional discrimination "intentionally perpetrated" because of his race (Count Two).[6] (Doc. 24). Title VII and Section 1981 have the same requirements of proof; thus, Powell's claims are analyzed under the same framework. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

Title VII (and thus Section 1981) makes it is unlawful for an employer to discharge any individual because of that individual's race or national origin. *See* 42 U.S.C. § 2000e–2(a)(1).[7] A plaintiff may use direct evidence, circumstantial evidence, or statistical evidence of discriminatory intent. *See, e.g.,* Standard v. A.B.E.L. Serv., Inc., 161 F.3d 1318, 1330 (11th Cir.1998). *See also* Rioux v. City of Atlanta, Ga. 520 F.3d 1269, 1274 (11th Cir. 2008).[8] Suncoast

---

e.g., Smith v. Books-A-Million, 398 Fed. Appx. 437 (11th Cir. 2010) (claims not included in the complaint are not required to be considered); Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir. 1998) ("parties frame the scope of the litigation at the time the complaint is filed[]"). Similarly, on summary judgment Powell argues a discriminatory working conditions claim and an entirely new drug test discriminatory discipline claim. These were likewise not alleged in the Complaint and thus, such claims are also not before this Court and will not be addressed.

[6] In the Complaint, Powell has asserted no different or more specific allegations as to his Section 1981 claim (*i.e.*, nothing separate and apart from this Title VII allegations). As such, his Section 1981 claim is based on the same specific allegations of his Title VII claim.

[7] Under Title VII, it is unlawful for an employer "to discharge any individual ... because of such individual's race...." 42 U.S.C. § 2000e–2(a). Under § 1981, "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a).

[8] Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). It is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997). Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race]." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008). As enunciated by this Court in Ferrell v. Masland Carpets, Inc., 97 F. Supp.2d 1114, 1123 (S.D. Ala. 2000):

"It is a rare case, however, where there exists actual direct evidence of discrimination." *Copley v. Bax*

Beverage Sales, Ltd., 295 F.3d 1223, 1227-1228 (11th Cir. 2002). Powell does not allege direct evidence or statistical proof, nor has he retained an expert in this case. Thus, the Court is concerned only with circumstantial evidence.

Where there is only circumstantial evidence, courts apply the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). Under McDonnell Douglas, the plaintiff has the initial burden of establishing a prima facie case of race discrimination. Id. The plaintiff must establish that: 1) he belongs to a racial minority; 2) he was subjected to adverse job action; 3) his employer treated similarly situated employees outside his classification more favorably or that he was replace by a person outside his protected class; and 4) he was qualified to do the job. Holifield v. Reno, 115 F.3d 1555, 1561–1562 (11th Cir. 1997).

Additionally, in Sims v. MVM, Inc., 704 F.3d 1327, 1332-1333 (11th Cir. 2013), the Eleventh Circuit clarified that the McDonnell Douglas framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case. See Smith, 644 F.3d at 1328. Rather, "[t]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional

---

*Global, Inc.,* 80 F.Supp.2d 1342, 1348 (S.D. Fla. 2000). The reason that "true" direct evidence is the exception rather than the rule is that courts have found "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate" as constituting direct evidence of discrimination. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1223 (11th Cir.1993)… there must be a direct correlation between the adverse employment action and the discriminatory comment for such a statement to constitute direct evidence.

By contrast, evidence that merely suggests a discriminatory motive is, by definition, circumstantial. Burrell, 125 F.3d at 1393-1394. "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard 161 F.3d at 1330. "To be direct evidence, the remark must indicate that the employment decision in question was motivated by race." Scott v. Suncoast Bev. Sales, Ltd., 295 F.3d 1223, 1227-1228 (11th Cir. 2002).

discrimination by the decisionmaker.  Id.  See generally Hamilton v. Southland Christian School, Inc., 680 F.3d 1316, 1320 (11th Cir. 2012).

A. **Discriminatory Drug Testing**

Powell alleges that he was discriminated against by ARE because he had to undergo "an abnormal amount of drug tests[.]" (Doc. 24 at 4, 6). Defendants moved for summary judgment on this claim. Powell failed to address this claim on summary judgment. Instead, Powell endeavors to assert a *new* claim for discrimination in drug testing: ARE "refused" to drug test him when investigating whether he had smoked synthetic marijuana (*i.e.*, he was denied the opportunity to be drug tested even though he requested such before his termination). (Doc. 53 at 21). This is simply another argument for Powell's discriminatory termination claim, which is addressed separately below. As such, Powell's "abnormal amount" of drug testing discrimination claim is deemed abandoned on summary judgment.[9] Thus, Defendants' motions,

---

[9] As explained in Rossi v. Fulton Cty., Ga. 2013 WL 1213243, *13 (N.D. Ga. Feb. 13, 2013) (discussing a line of Eleventh Circuit cases regarding abandonment of claims on summary judgment):

> ……*Edmondson v. Bd. of Trustees of Univ. of Ala.*, 258 Fed. Appx. 250, 253 (11th Cir. Dec. 4, 2007) ("In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995). A party has an obligation to respond to an argument raised in a motion for summary judgement. *See Orquiola v. Nat'l City Mortg. Co.,* 510 F.Supp.2d 1134, 1139 (N.D.Ga.2007) (Forrester, J.) (granting summary judgment as to plaintiff's state law claims because plaintiff did not respond to defendant's summary judgment motion on those claims); *Burnett v. Northside Hosp.,* 342 F.Supp.2d 1128, 1140 (N.D.Ga.2004) (Duffey, J.) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party."); *Welch v. Delta Air Lines*, 978 F.Supp. 1133, 1137 (N.D.Ga.1997) (Hull, J.) ("Plaintiff's failure to respond to [d]efendant's argument alone entitles [d]efendant to summary judgment on these claims."). This Court is not under a duty to exercise imagination or conjure what a party might have argued, but did not argue; nor is this Court obliged to do Plaintiff's (or her counsel's) work. *See Resolution Trust Corp.*, 43 F.3d at 599 (noting that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it"); *Bowden ex rel. Bowden v. Wal–Mart Stores, Inc.,* 124 F.Supp.2d 1228, 1236 (M.D.Ala.2000) (holding that "[i]t is not for the court to manufacture arguments on Plaintiff's behalf").

as to this claim, are **GRANTED.**

B. **Discriminatory Termination**

Powell alleges discrimination based on his race (African American) claiming that he was terminated on January 19, 2012 under "false pretenses" (that someone made up a story that he was smoking synthetic marijuana in the company van on January 18th so his supervisor's Caucasian relative could be promoted to his job). In support Powell alleges "he was… replaced by Jason Bishop, a white male[]" "no later than March 22, 2012" (who he claims is related to Eubanks).[10] (Doc. 53 at 18; Doc. 24 at 5; Doc. 43-7 (Dep. Powell at 158-159)).

The parties do not dispute that Powell is a member of a protected class (African American) and that he suffered an adverse employment action (he was fired). Likewise, there does not appear to be a dispute as to whether Powell was qualified for his position (leadman and technician).

Powell claims that he was replaced by Caucasian employee, Jason Bishop. ARE's evidence indicates that Powell was not replaced by Bishop, but rather was replaced by a Caucasian employee named Kyle Clark. (Doc. 43-6 (Dep. Corbeil at 27); Doc. 43-7 (Dep.

---

The undersigned recognizes that these cases appear to conflict with another line of Eleventh Circuit cases which direct district courts to review a motion for summary judgment and supporting documents to determine whether genuine issues of material fact exist despite a party's failure to respond. *See Trs. of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Employers v. Wolf Crane Serv., Inc.,* 374 F.3d 1035, 1039–40 (11th Cir.2004); *United States v. One Piece of Prop., 5800 S.W. 4th Ave., Miami, Fla.,* 363 F.3d 1099, 1101–02 (11th Cir.2004). The Court finds, however, that the apparent [conflict] may be resolved in the following manner: Where a party wholly fails to respond to a summary judgment motion, the district court must make sure that it nonetheless is appropriate to enter summary judgment against the party that did not respond; in contrast, where the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned.

[10] Powell does not explain how being replaced by a relative of Eubanks would constitute unlawful discrimination. Regardless, Bishop is not related to Eubanks but Bishop's wife is the sister of ARE employee Clay Hough's wife and Hough who is the first cousin once removed of Eubanks. (Doc. 43-9 (Dep. Bishop at 8); Doc. 43-10 (Dep. Eubanks at 95); Doc. 43-16); Doc. 43-6 (Dep. Corbeil at 25)). Per Eubanks, Bishop is "my second cousin's [Clay Hough] wife's sister's husband, whatever you want to qualify that is…" (Doc. 43-10 (Dep. Eubanks at 95)).

Powell at 85); Doc. 62-1 (Aff. George-SEALED)). Thus, Powell prevails on his prima facie case because he was in fact replaced by a person outside his protected class.

Also, when an employee claims that he did not violate the work rule, the Eleventh Circuit has instructed as follows:

> … in lieu of evidence of a similarly-situated comparator, a plaintiff may make out a *prima facie* case of racial bias in the application of discipline for a violation of work rules by showing that he did not actually violate the work rule. Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir.1989). However, when an employee argues that he did not actually violate the rule in question, "an employer may rebut this allegation by showing its good faith, honest belief that the employee violated [the] rule." Stone & Webster Constr., 684 F.3d at 1136. If an employer terminates an employee "because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race.'" Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452–53 (11th Cir.1987).

Winborn v. Supreme Beverage Co., Inc., 572 Fed. Appx. 672, 674 (11th Cir. 2014).

Powell contends that he did not violate the work rule and has submitted evidence in support. Still, ARE may prevail if it establishes that it honestly believed that Powell violated the company policy, even if mistaken. This is because under such circumstances, the termination is not "because of race." See *supra*. "The inquiry…centers on the employer's beliefs, not the employee's beliefs." Alvaraz v. Royal Atl. Dev., Inc., 610 F.3d 1253, 1266 (11th Cir. 2010) ("Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991) (inquiry is limited to whether employer *believed* employee was guilty of misconduct and if so, whether that was reason behind discharge; that employee did not actually engage in misconduct is irrelevant[]")).

The evidence indicates that there is a genuine issue of material fact as to whether ARE had a good faith, honest belief that Powell had violated its drug policy. Powell has presented sufficient evidence, through deposition testimony and affidavits, to contradict ARE's claim that it "honestly believed" that he smoked spice in the company van on January 18, 2012. See *supra*

14

Section I.

However, "[a] reason is not a pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason. Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir.2006)." Taylor v. On Tap Unlimited, Inc., 282 Fed. Appx. 801, 803 (11th Cir. 2008) (emphasis added). Our "sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision." Gamboa v. American Airlines, 170 Fed. Appx. 610, 612-613 (11th Cir. 2006). The Court does not sit "as a 'super-personnel department,' and it is not [the Court's] role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Id.* (quoting Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir.2000)).

Powell alleges that he was fired to make way for Eubanks' relative to take his job. He then summarily asserts that this constitutes racial discrimination. To support his race claim, Powell further asserts that because Wallace took Bishop's and Eubanks' word over his without investigating it, this shows that his termination was based on his race. However, Powell does not reference any racial remarks, comments, environment, behavior, actions, etc. by ARE, Wallace and/or Eubanks. Instead, Powell simply equates what could (at best) be construed as "taking sides" and/or "failing to investigate" as "being racist," simply because ARE believed the person who reported the prohibited behavior. This does not adequately support a claim for race discrimination.

In sum, Powell has failed to submit sufficient evidence from which a reasonable factfinder could find that ARE's termination decision was based on race. "Unless something links the actions to the employee's race, that a decisionmaker singles an employee out does not

permit a jury to infer intentional discrimination based on race." Turner v. Florida Prepaid Coll. Bd., 522 Fed.Appx. 829, 833 (11th Cir.2013). Thus, while ARE (and/or Eubanks or Wallace) may have acted unfairly -- *and perhaps even dishonestly* -- Powell has shown no evidence of race being the motivating factor for his termination, or the presence of any discriminatory intent. See, e.g., Burch v. Coca-Cola Bottling Co., United, Inc., 2014 WL 4926181 (N.D. Ala. Sept. 30, 2014) (finding similarly).

In the end, as presented to the Court, Powell's claim is not one of race discrimination. Rather, in Powell's own words, his claim is about preferential treatment from a higher-up to one of his relatives (*i.e.*, nepotism): "I knew Lee [Eubanks] was trying to get rid of me to move Jason [Bishop] in, his relative in." (Doc. 43-7 (Dep. Powell at 159)). Nepotism is not actionable under Title VII or Section 1981, and "[i]f anything, this evidence weakens Plaintiff['s] argument by suggesting that the true motivation for … [Powell']s termination was not racism, but nepotism." Lawson v. KFH Indus., Inc., 767 F. Supp. 2d 1233 (M.D. Ala. 2011). As such, Defendants' motions, as to this claim, are **GRANTED.**

## IV. Conclusion

Accordingly, it is **ORDERED** that Defendant ARE's Motion for Summary Judgment (Docs. 43, 46) and Defendants Eubanks' and Wallace's Motion for Summary Judgment (Docs. 44, 47) are **GRANTED.**

**DONE** and **ORDERED** this the 20th day of **November 2014.**

s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**
